

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

September 9, 1960

Mr. O. S. Moore
District Attorney
Hunt County Courthouse
Greenville, Texas

Opinion No. WW-930

Re: Does a bonus card distributed
by a grocery, which card con-
tains spaces for recording
the amount of purchases and
also the number of store visits,
constitute a lottery in viola-
tion of the penal code?

Dear Mr. Moore:

Your request for an opinion has been received and carefully
considered by this office. We quote your letter as follows:

"A question has arisen with respect to whether or
not the use by local merchants of a 'bonus card' con-
stitutes a lottery in violation of the Penal Code.

"The exact type of card to be used is enclosed
herein. This bonus card bears the name of the merchant
and his address and has a serial number printed on the
back side of same. It is one card, but is divided into
two sections by a heavy black line as appears on the
face of the card. Each of the two sections are separate
from the other and are independent of the other. The
right two-thirds of the card is known and referred to
as the 'weekly store visit record'.

"Printed around the edge of the purchase record
side of the card are a series of money values ranging
from 10¢ to $2.00, totaling $100.00. These money values
are designed to be punched out with a hand punch each
time a person makes a purchase and the amount of such
purchase is punched along the edge of the purchase
record side of the card. On a designated day each week,
the holder of the card can obtain a free $2.00 purchase
punch. When the purchase record is completely punched,
a flat $1.00 is given to the holder of the card. This
amount does not vary and is guaranteed. The purchase
record section of the card is similar to the trading
stamp program, which I do not question, being in effect
a trade discount privilege and applicable to all custom-
ers on an equal basis.

"The left portion of the card, the weekly store visit record, applies to anyone. Upon the weekly store visit record being completely punched a specified number of times, and without any purchases being made, required or requested, the seal appearing on the left section of the card is opened by a store employee and if the skill question is answered correctly by the card holder, the amount of money printed under the seal is paid.

"The cards are distributed to the public free of charge and without any obligation, requisite or requirement of purchases or any other kind or character of obligations. At the time the bonus cards are distributed, there are likewise distributed detailed, itemized and specific instructions as to how the program operates and same is fully explanatory. A copy of such instructions is enclosed herewith and a reading of same fully apprises the reader of the operation of the program. In addition to the bonus cards and instructions being distributed, 'fact sheets' that contain the skill questions and answers printed under the seals are distributed. A copy of the 'fact sheets' used is enclosed herewith.

"Anyone holding a card may obtain from any store employee a free 'weekly store visit punch'. The program does not require any person to purchase any merchandise whatsoever in order to participate in attempting to answer the skill question printed under the seal.

"Under the above given set of facts, and assuming that the users of the cards strictly adhere to same, please advise whether the use of the bonus cards as above outlined constitutes a lottery in violation of the Penal Code of the State of Texas."

This is the second request received by this Department for an opinion based upon this particular "Profit Sharing Bonus Card". The other request was answered in Opinion No. WW-843 where it was held that the card did constitute a lottery under the laws of the State of Texas. The two portions of the card, with the set of instructions given in that fact situation, were used together in such a way that the bonus on the "store visit" portion of the card could probably not be won until the "purchase record" end had been completely punched out. This office made it clear in both Opinion No. WW-843 and in Opinion No. WW-840 that in any scheme where the customer is given an advantage over the non-customer, the element of consideration is present.

We are now called upon to state whether the same bonus card constitutes a lottery when used with a different set of instructions, pertinent parts of which follow:

1. All bonus cards are distributed free and without any requirement of any purchase whatsoever.

2. The bonus card advertising plan entails two separate, distinct and independent plans for distribution of cash. They are: (1) The purchase discount bonus, and (2) The Store visit game of skill program.

4. The store visit program is separate, distinct and independent of the purchase discount bonus program. Every week the holder of a ticket visits the store, one of the store visit numbers appearing on the face of the card is punched out. No purchases, whatsoever, are required to have the store visit punch entered on the card. When all of the store visits are punched out and irrespective of whether or not any of the purchase records are punched, the seal is lifted by the store-manager or assistant store-manager, and the holder of the card is asked the question which is concealed under the seal. If the holder answers the question correctly, then the indicated bonus is paid to the holder. If the holder is unable to correctly answer, no bonus is paid at all.

5. So far as the question under the seal is concerned, it is not related to any purchase made. It can be opened when the store visit punches are completed, whether the purchases have been made or not, and either before or after the purchases discount has been paid. The purchase discount will be paid whether or not the seal has been opened and independent of the seal.

7. A person, other than the checker, will be designated to punch the free visit record on the cards, and information sheets will be distributed at a place in the store, clearly marked and, away from the check-stand.

In answering your question, we will take the two portions of the card and examine them separately. There seems to be little doubt but that the purchase record side of the card is not a lottery in violation of the penal code if the stores and employees adhere strictly to the instruction sheet attached to your letter. As you stated, this portion of the "bonus card" is merely a trade discount privilege and applicable to all customers on an equal basis.

The "weekly store visit" end of the card will now be discussed. It is well settled that a lottery consists of three essential elements, namely: (1) A prize or prizes, (2) the award or distribution of the prize or prizes by chance, and (3) the payment either directly or indirectly by the participants of a consideration for the right or privilege of participating. Cole v. State, 133 Tex.Crim.R. 548, 112 S.W.2d 725 (1937).

The first element is certainly present with prizes from $1.00 to $1,000.00.

The second element of chance is also present in the "weekly store visit" portion of the card. Everyone receives a prize, but the amount of the prize is based upon chance.

It only remains to be determined whether the third element was present, that is, the payment of a consideration by the participants. We think this question has been completely foreclosed by the Court of Criminal Appeals in Brice vs. State, 156 Tex. Crim.R. 372, 242 S.W.2d 433. We quote from the opinion:

> "As shown by the exhibits and the testimony, anyone could register once each day for the three day period and thus become eligible for the drawing by going to the mezzanine floor and writing their name, address and telephone number on a registration card. Some six or eight thousand cards were filled out prior to the drawing held at the store when the prizes shown in the state's second exhibit were given away.

> "One could not be a prize winner without so registering at the store and, as it was widely advertised, no registrant was required to buy anything or to be at the store at the time of the drawing.

> " * * *

> " . . . it is clear that three things must concur to establish a thing as a lottery: (a) A prize or prizes; (b) the award or distribution of the prize or prizes by chance; (c) the payment either directly or indirectly by the participants of a consideration for the right or privilege of participating.

> " * * *

> "'The fact that the holder of the drawing expects thereby to receive, or in fact does receive, some benefit

in the way of patronage or otherwise, as a result of the drawing, does not supply the element of consideration paid by the chance holder for the chance . . . .'

" * * *

" . . . The crux of the opinion lies in the third section, or section 'c', reading as follows: 'the payment either directly or indirectly by the participants of a consideration for the right or privilege of participating.'

"The 'consideration' in this case which moves from the parties participating in the drawing for the prize, or prizes, to appellant is entirely fanciful. It is not sufficiently substantial to be classed as a reality."

If merely going to the store, as held in the Brice case, did not constitute a consideration we can see no reason for holding that additional visits would so so, assuming the customer was required to pay nothing and was not obligated to buy anything. We are therefore of the opinion and so hold that the proposed plan does not constitute a lottery.

## S U M M A R Y

The "purchase record" portion of this bonus card, used with the instruction sheet attached to this request and distributed by a grocery, does not constitute a lottery in violation of the Texas Penal Code; neither does the "store visit" portion of this same card, distributed by a grocery and used with the instruction sheet attached to this request.

Yours very truly,

WILL WILSON
Attorney General of Texas

By: W. RAY SCRUGGS
Assistant

WRS:vj

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman

Marvin Thomas
C. K. Richards
John Reeves
Ben Harrison

REVIEWED FOR THE ATTORNEY
GENERAL BY:

Houghton Brownlee